1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8    DEENA R. D.,

9                    Plaintiff,

10         v.

11   COMMISSIONER OF SOCIAL SECURITY,

12                    Defendant.

CASE NO. C24-250-BAT

**ORDER AFFIRMING THE
COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH
PREJUDICE**

13         Plaintiff appeals the denial of her application for Supplemental Security Income and

14   Disability Insurance Benefits. She contends the ALJ erred by (1) misevaluating the medical

15   evidence; (2) misevaluating plaintiff's testimony; (3) misevaluating the lay evidence; and

16   (4) erroneously determining residual functional capacity ("RFC"). Dkt. 18, at 2. As discussed

17   below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with

18   prejudice.

19                                  **BACKGROUND**

20         Plaintiff is currently 51 years old, attended some high school, and has worked as a

21   certified nursing assistant. Tr. 669, 684. In February 2016, she applied for benefits, alleging

22   disability as of August 2010. Tr. 178, 669. Her applications were denied initially and on

23   reconsideration. Tr. 178–207, 212–41. After hearings and unfavorable ALJ decisions, the

Appeals Council twice remanded this case for further proceedings in 2019 and 2022. Tr. 280–85, 315–22; *see* Tr. 49–91 (2018 hearing), 92–123 (2021 hearing), 254–79 (2018 ALJ decision), 286–314 (2021 ALJ decision). In the meantime, plaintiff's prior denial of benefits was affirmed by the federal district court and plaintiff thereafter amended the alleged onset date for disability in this matter to **July 15, 2014**, the day after the previously adjudicated period. Tr. 148–72, 242–53. The ALJ conducted the most recent hearing in April 2023. Tr. 124–47. In a July 2023 decision, the ALJ determined that plaintiff met the insured status requirements of the Social Security Act through September 30, 2015, and has not engaged in substantial gainful activity since the alleged onset date of July 15, 2014. Tr. 24. The ALJ found the following severe impairments: PTSD; depressive disorder; anxiety disorder; substance abuse disorder; ADHD; obesity; lumbar and cervical degenerative disk disease; right shoulder condition; and bilateral hip conditions. Tr. 24. The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 25. The ALJ assessed an RFC of light work with additional physical, postural, and mental limitations, including that plaintiff can perform simple, routine tasks, can have no contact with the public, and can work in proximity but not in coordination with coworkers. Tr. 27. The ALJ determined that plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 38. The ALJ therefore concluded that plaintiff was not disabled from the alleged onset date of July 15, 2014, through the date of the decision of July 27, 2023. Tr. 39. As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–6.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v.*

1    *Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R.

2    § 404.1502(a). The ALJ's decision may not be reversed on account of an error that is harmless.

3    *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court

4    must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

5    2002). The Court finds that plaintiff has not demonstrated that the ALJ failed to support the

6    decision with substantial evidence or harmfully misapplied the law with respect to the medical

7    evidence, plaintiff's testimony, lay testimony, or the RFC assessment.

8    **1. Medical Evidence**

9    Plaintiff argues the ALJ erred in evaluating the medical evidence. Dkt. 18 at 3–12. For

10   cases filed before March 2017, as this one was, the ALJ should generally give more weight to the

11   opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an

12   examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

13   1996). Where not contradicted by another doctor, an ALJ may reject a treating or examining

14   doctor's opinion only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, an

15   ALJ may reject a treating or examining doctor's opinion only by giving "specific and legitimate

16   reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray*

17   *v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and

18   thorough summary of the facts and conflicting evidence, stating her interpretation of the facts

19   and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

20   The opinion of a non-examining physician cannot by itself constitute substantial evidence that

21   justifies the rejection of the opinion of either an examining physician. *Pitzer v. Sullivan*, 908

22   F.2d 502, 506, n. 4; *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

23

Plaintiff challenges primarily the ALJ's evaluations of examining psychologists Dr. R.A. Cline, Psy.D., and Dr. William Wilkinson, Ed.D., and of treating physicians Dr. Roxanne Ho, M.D., and Dr. Britt Anderson, M.D. Dkt. 18, at 3–8. Plaintiff also contends that the ALJ's decision was contradicted or unsupported by other medical evidence. Dkt. 18, at 8–12. The Court finds that the ALJ cited specific and legitimate reasons for discounting the contradicted medical opinions of Drs. Cline, Wilkinson, Ho, and Anderson, and that plaintiff has failed to show that her alternative reading of the medical evidence demonstrates that the ALJ's decision was unsupported by substantial evidence or the result of a misapplication of the law.

### a.  Examining Psychologists Drs. Cline and Wilkinson

The ALJ discounted the opinions of examining psychologists Dr. Cline and Dr. Wilkinson. Plaintiff has failed to demonstrate that the ALJ's decision to do so was unsupported by substantial evidence or the result of a misapplication of the law.

In June 2014, Dr. Cline examined plaintiff for a psychological evaluation, noting that there were no medical records available to review. Tr. 930–34. Dr. Cline opined that plaintiff had mild and moderate limitations in several domains, as well as marked limitations in communicating and performing effectively in a work setting, completing a normal work day and work week without interruptions from psychologically based symptoms, and maintaining appropriate behavior in a work setting. Tr. 933. Dr. Cline concluded that plaintiff would be impaired for six to nine months with available treatment, and commented, "Claimant appears bright, and if she could get off the methadone, and continue her mental health therapy she seems like a good candidate for returning to school and retraining, possibly through DVR." Tr. 933. In April 2016, Dr. Wilkinson examined plaintiff for a psychological evaluation, also noting that he had reviewed no records. Tr. 2015–23. Dr. Wilkinson concluded that plaintiff had mild and

moderate limitations in several domains, as well as marked limitations in performing activities

within a schedule, maintaining regular attendance, and being punctual within customary

tolerances without special supervision; completing a normal work day and work week without

interruptions from psychologically based symptoms; and maintaining appropriate behavior in a

work setting. Tr. 2017–18. Dr. Wilkinson concluded that plaintiff would be impaired for twelve

months with available treatment and commented, "[plaintiff] needs to continue with her present

commitments and until such time social security either approves or disapproves her disabilities

so she can move along in a fairly young life of 42; if there are turndowns, then she will need to

consider vocational redirection and DVR would appear to be an option, if she could qualify." Tr.

2018.

The ALJ gave little weight to the opinions of Drs. Cline and Wilkinson because

(1) "[t]hey had an insufficient understanding of the overall record on which to form an opinion

because they each saw the claimant on a single occasion and reviewed no treatment notes or

other records"; (2) "[n]either examiner provided specific rationale to support their assessed

limitations"; and (3) "their assessments are not consistent with the overall record." Tr. 35–36.

The ALJ noted, for example, that in contrast to the marked limitations in communication and

behavior assessed by Drs. Cline and Wilkinson, mental status examinations typically reflected a

normal presentation by plaintiff, with no abnormality in speech, behavior, eye contact,

concentration, attention, memory, or thought processes, and plaintiff had no difficulty interacting

appropriately with providers. Tr. 36 (citing Tr. 1061–1174, 1175–81, 2301, 2362, 2996–3178,

3778, 3791–92, 3810–11, 3816, 3822, 3827, 3858–59, 3874, 3900, 3903, 3908, 3911–12, 3922,

3949, 3972, 3986). The ALJ noted that treating mental health providers referred to little

dysfunction in plaintiff's ability to manage daily activities or work activities. Tr. 36 (citing Tr.

3084); *see* Tr. 3084 (noting that plaintiff did not have a serious dysfunction in role performance, e.g., unable to work, attend school, or meet developmentally appropriate responsibilities). The ALJ opined that plaintiff's activities suggested generally intact social and cognitive function that was inconsistent with the assessments of Drs. Cline and Wilkinson. Tr. 36. Those activities included working a side job "mystery shopping" from April 2016 to at least 2018, which required her to go to businesses to shop or engage in job interviews to assess the businesses' processes; assisting her friend to plan a wedding; serving as the caregiver to her boyfriend after his back surgery; making and selling coats for dogs and cats; making masks and taking them to friends and people at the suboxone clinic; traveling independently; shopping in stores; driving herself for transportation; taking care of household chores, cooking, and personal care; traveling by plane without problems in 2017; and traveling out of town without problems in 2019. Tr. 34. Furthermore, the ALJ remarked that the assessment by Drs. Cline and Wilkinson that plaintiff was limited in completing a normal work day or work week and in maintaining regular attendance appeared to be general statement about plaintiff's inability to work, a legal conclusion reserved to the Commissioner, rather than being a specific limitation. Tr. 36.

The ALJ cited specific and legitimate reasons supported by substantial evidence for discounting the psychological evaluations of Drs. Cline and Wilkinson. Although plaintiff is correct that the ALJ could not discount their opinions *solely* because they were examining opinions, the ALJ could certainly give less weight to their opinions because Drs. Cline and Wilkinson each examined plaintiff a single time and without the benefit of reviewing any of the voluminous medical evidence—the current case record is 3,997 pages—that could be reasonably construed as undermining their assessments. Plaintiff presents at best an alternative interpretation of the opinions of Drs. Cline and Wilkinson that does not undermine the ALJ's reasonable

reconciliation of the medical evidence. Moreover, the Court notes that Dr. Cline concluded that plaintiff would be impaired only for six to nine months and, with proper treatment, would be a good candidate for a return to school and job retraining. Tr. 933. Similarly, Dr. Wilkinson suggested that if plaintiff's application for disability benefits were turned down, then vocational rehabilitation "would appear to be an option." Tr. 2018. Both of these statements appear to suggest a greater capacity to work than that opined by Drs. Cline and Wilkinson.

### b.  Treating Physicians Drs. Ho and Anderson

The ALJ discounted the opinions of treating primary care providers Drs. Ho and Anderson as poorly supported and inconsistent with the record. Tr. 36. Plaintiff has failed to demonstrate that the ALJ's decision to do so was unsupported by substantial evidence or the result of a misapplication of the law.

### 1.  Dr. Ho

In May 2016,[1] treating primary care physician Dr. Ho opined that plaintiff was limited *physically* to sedentary work due to a lumber spine disorder, but that he was also severely limited *mentally*, rendering him unable to meet the demands of sedentary work. Tr. 2026. Dr. Ho did not herself explain or support why plaintiff was severely limited mentally, instead stating, "See separate eval form from mental health provider."[2] Tr. 2955. The ALJ cited ways in which Dr. Ho's May 2016 opinion as poorly supported and inconsistent with the record. Tr. 36–37. First, the ALJ noted that Dr. Ho did not provide a complete examination that contained objective findings consistent with her opinion. Tr. 36. Physically, the only examination findings regarding

---

[1] The ALJ referred to Dr. Ho's March 2016 evaluation, but the March date appears to be the date that plaintiff authorized Dr. Ho to release the form to DSHS. *Compare* Tr. 36 *with* Tr. 2024. The examination took place and the form was signed on May 2, 2016. Tr. 2026.

[2] It appears that the separate mental health evaluation was Dr. Wilkinson's April 2016 psychological evaluation form. Tr. 2015–23

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 7

1    the lumber spine showed a normal range of motion. Tr. 36 (citing Tr. 2027). Mentally, Dr. Ho

2    did not refer to mental status findings or other rationale to support her assessment regarding

3    mental limitations.[3] Tr. 36. Second, the ALJ noted that although plaintiff's primary complaints

4    during pain management appointments in 2015 and 2016 were of low back pain, fewer

5    functional limitations and less pain were suggested by imaging, clinical examinations, self-

6    reports of pain, and activities. Tr. 36, 1037–56; *see, e.g.*, Tr. 989 (in June 2015 imaging:

7    "Minimal levocurvature of the lower lumbar spine is seen. Otherwise normal alignment of the

8    lumbar spine seen."); 1037–38 (in August 2015 provider examining imaging of normal

9    alignment, no spondylolisthesis or scoliosis, no abnormal motion with flexion or extension, and

10   opining mild to moderate degenerative facet disease mid to lower lumber spin and otherwise

11   normal with no abnormal motion on flexion-extension), 1044 (in February 2016 plaintiff

12   informing provider that a month after neurotomy pain is "at least 75% better, she is more active,

13   and using less pain medications), 1178 (in May 2016, provider noting that plaintiff reported

14   "[s]leep has been fine" though she woke "a couple of times due to back pain," and that plaintiff

15   "[h]as been working doing mystery shopping, has signed up for about 20 different companies"),

16   1179 (noting that plaintiff has been caregiver for boyfriend after he had second back surgery).

17   Third, the ALJ noted that although the record first documents significant complaints of neck and

18   upper extremity pain in June 2016, plaintiff's clinical presentation in examinations for neck,

19   upper extremities, and back through October 2016 was largely normal. Tr. 36, 2254–59; *see, e.g.*,

20   Tr. 2301–02, 2362–63.

21

22

23

---

[3] To the extent Dr. Ho justified relied upon Dr. Wilkinson's psychological evaluation to justify an assessment of severe mental limitations, the Court has already determined that the ALJ reasonably discounted Dr. Wilkinson's opinion.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 8

1    The ALJ's reasons for discounting Dr. Ho's opinion as poorly supported and inconsistent

2  with medical record and plaintiff's activities were specific and legitimate. Plaintiff's alternative

3  interpretation of the medical evidence does not undermine the ALJ's reasonable evaluation of

4  Dr. Ho's opinion.

5                                    **2.  Dr. Anderson**

6    In February 2018, Dr. Anderson opined that plaintiff was limited to sedentary work by

7  lumbar and cervical degenerative disk disease; degenerative joint disease in the hips; and right

8  shoulder tendonitis. Tr. 2948–49. Dr. Anderson supported these conclusions with an examination

9  with findings of diminished range of motion in the right shoulder, cervical spine, and lumbar

10  spine, and a positive straight leg test. Tr. 2953. The ALJ discounted Dr. Anderson's conclusions

11  and examination findings as not consistent with the record as a whole, including other

12  examinations, plaintiff's clinical presentation, and plaintiff's activities. Tr. 37. The ALJ

13  acknowledged that the record reflected treatment for cervical spine degenerative disk disease,

14  including cervical spine surgeries in February 2013, January 2017, and December 2018

15  (including a fusion at C6-C7); and that plaintiff also required right shoulder surgery in 2009. Tr.

16  29 (citing, *inter alia*, Tr. 829, 838, 1066, 2423, 2978). Nonetheless, the ALJ noted that the record

17  for the relevant period reflected little mention of shoulder pain and limitations. Tr. 29, 37. The

18  ALJ noted that there were more frequent complaints and treatment for neck pain, but the

19  evidence and plaintiff's activities suggested that neck symptoms were sufficiently managed apart

20  from two periods of acute worsening related to plaintiff's surgeries in January 2017 and

21  December 2018. Tr. 29, 87. For example, the ALJ remarked that in August 2017, plaintiff sought

22  emergency treatment for a recent onset of *left* shoulder and arm pain after bending down to tie

23  her shoe and at that time did not report severe neck pain. Tr. 37 (citing Tr. 2693). Instead,

plaintiff referred to "some" symptoms on the left side of her neck over the shoulder blade area post-surgery and, upon examination, reported tenderness with palpation of the thoracic spine and left scapula while exhibiting normal range of motion. Tr. 37 (citing Tr. 2693, 2695). Thus, apart from Dr. Anderson's own February 2018 examination to prepare DSHS disability forms, nothing in the treatment record reflects specific findings or treatment for neck pain symptoms between the surgeries of January 2017 and December 2018. Tr. 37. Thereafter from December 2018 to May 2023, plaintiff's pain from any source appears to have been well-controlled with treatment. Tr. 30–31. With respect to back pain and lower extremities, the ALJ noted that the medical record after 2016 reflected generally intermittent complaints of back pain and, beginning in 2018, hip pain. Tr. 37 (citing Tr. 2030–2853, 2947–2953, 2975–2995). Nonetheless, none of the imaging after 2016 suggested a worsening of the spine condition, imaging in August 2017 was normal, and most clinical examinations were unremarkable, indicating no muscle weakness or atrophy and no abnormality in gait, range of motion, or neurological function. Tr. 37 (citing Tr. 2301–02, 2359–2363, 2606, 2695, 2853, 2985, 2994, 3200–01, 3728–3776, 3882–3994). Furthermore, as discussed earlier with respect to Dr. Ho, the ALJ noted that plaintiff's activities suggested fewer functional limitations than recommended by Dr. Anderson.

The ALJ's reasons for discounting Dr. Anderson's opinion as not well-supported and inconsistent with medical record and plaintiff's activities were specific and legitimate. Plaintiff's alternative interpretation of the medical evidence does not undermine the ALJ's reasonable evaluation of Dr. Anderson's opinion.

### c.  Other Medical Evidence

Plaintiff provides a lengthy summary of other medical evidence and argues that such evidence contradicts the ALJ's findings. Dkt. 18, at 8–12. The Court finds that plaintiff's

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 10

1    alternative interpretation of the other medical evidence does not undermine the ALJ's reasonable

2    reconciliation of conflicting evidence, and has not demonstrated that the ALJ's decision was

3    unsupported by substantial evidence or the result of a misapplication of the law.

4    **2. Plaintiff's Testimony**

5    Plaintiff argues that the ALJ harmfully erred by failing to provide "specific, clear and

6    convincing" reasons for discounting her testimony about the severity of her symptoms and

7    functional limitations. Dkt. 18, at 12–20; *see Molina*, 674 F.3d at 1112. The Court disagrees.

8    **1. Physical Impairments**

9    The ALJ discounted plaintiff's allegations of disabling physical impairments because

10   they conflicted with the objective medical evidence, evidence of improvement with treatment,

11   medication-seeking behavior, and activities. Tr. 29–32. The ALJ cited specific, clear and

12   convincing reasons for discounting the reliability of plaintiff's testimony about the severity of

13   her physical impairments.

14   First, the ALJ reasonably concluded that plaintiff's disability allegations were

15   inconsistent with the objective medical evidence. *See* 20 C.F.R. §§ 4041529(c)(2),

16   416.929(c)(2); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). The ALJ noted that

17   although plaintiff alleged chronic and debilitating neck and shoulder pain, clinical exams showed

18   largely normal findings, including full range of motion in the neck and shoulders. Tr. 30 (citing

19   Tr. 2695, 2994, 3200, 3217), 31 (citing Tr. 3423–24). Substance abuse treatment notes from

20   March 2020 to May 2023 also showed that plaintiff's clinical presentation was consistently

21   unremarkable, exhibiting no neurological and motor abnormalities or acute distress. Tr. 31–32

22   (citing Tr. 3882–992). Similarly, the ALJ noted that despite plaintiff alleging chronic and

23   debilitating back and hip pain, imaging in June and August of 2015 revealed only mild to

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 11

1    moderate abnormalities, and a 2017 x-ray of the spine revealed normal findings. Tr. 31 (citing

2    Tr. 989, 1037, 2853). Physical exams consistently indicated normal findings and substance abuse

3    treatment notes showed consistently unremarkable clinical findings. Tr. 31–32 (citing Tr. 1050,

4    2301–02, 2359–63, 2666, 2985, 2994, 3200–31, 3882–994).

5         Second, the ALJ discounted plaintiff's symptom testimony because of the improvement

6    of plaintiff's symptoms with treatment. Tr. 29–32. *See* 20 C.F.R. §§ 404.1529(c)(3),

7    416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). The ALJ noted that

8    plaintiff's pain was effectively managed with medication and surgical treatment. Tr. 30–31

9    (citing Tr. 1044, 3063, 3420).

10         Third, the ALJ discounted the reliability of plaintiff's testimony about pain due to

11   plaintiff's documented history of seeking opioid pain medications and non-disclosure of taking

12   opioid pain medications. Tr. 32–33. The ALJ noted that in 2013 plaintiff was not truthful to her

13   primary care physician Dr. Ho about her methadone clinic participation until screened for drugs.

14   Tr. 32 (citing Tr. 3682). That lack of disclosure continued into the period relevant to the current

15   application. In 2015, plaintiff sought pain management treatment from Dr. Charles Chabal, MD.,

16   related to her low back pain and told him that she was taking no opioid pain medication;

17   however, a urine toxicology screen showed high levels of methadone, at which point plaintiff

18   revealed that she had been obtaining methadone from a friend. Tr. 1047, 1049. Although Dr.

19   Chabal (as did Dr. Ho before him) declined to prescribe plaintiff opioid medications, plaintiff

20   sought pain management treatment in January 2020 with Dr. Steven Stanos, D.O., who

21   prescribed Percocet with the understanding that plaintiff had received opioid medication before

22   from Dr. Chabal. Tr. 2979. Also in January 2020, plaintiff told Dr. Anderson that she had never

23   had any substance abuse problems. Tr. 2988. In March 2020, plaintiff indicated she misused

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 12

1   prescription oxycodone, obtained morphine off the street, intermittently used heroine, used the

2   substances since 2015, and had last used in February 2020. Tr. 3882. These admissions

3   contradicted plaintiff's 2023 hearing testimony that she has been sober since February 2012. Tr.

4   64.

5          Fourth, the ALJ found that plaintiff's activities undermined her allegations of debilitating

6   physical impairments. Tr. 34–35; *see Molina*, 674 F.3d at 1113 ("Even where those activities

7   suggest some difficulty in functioning, they may be grounds for discrediting the claimant's

8   testimony to the extent they contradict claims of a totally debilitating impairment."). Plaintiff

9   alleged that her constant, severe pain limited her ability to sit, stand, or walk, and that she spent

10  most of the day in a recliner with her feet elevated and had difficulty walking more than two

11  blocks. Tr. 134–35. The ALJ noted that plaintiff performed a number of activities that

12  contradicted the severity of her symptom allegations: she worked as a mystery shopper from

13  April 2016 to May 2018, which required her to visit various businesses to shop; she cared for her

14  boyfriend after his back surgery; she made masks and took them to friends at people at the

15  suboxone clinic; and she shopped in stores, drove, performed household chores, cooked, and

16  managed self-care. Tr. 34 (citing Tr. 58–59, 713–18, 1179, 2917, 3149, 3154).

17         The ALJ cited specific, clear and convincing reasons for discounting plaintiff's

18  allegations of debilitating physical symptoms. Plaintiff's arguments to the contrary do not

19  undermine the reasonableness of discounting plaintiff's testimony and do not demonstrate that

20  the decision was unsupported by substantial evidence or a misapplication of the law.

21              **2. Mental Impairments**

22         The ALJ found that plaintiff's allegations of disabling mental impairments conflicted

23  with the objective medical evidence, her improvement with treatment, and her activities. The

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 13

1    ALJ cited specific, clear and convincing reasons for discounting the reliability of plaintiff's

2    testimony about the severity of her mental impairments.

3        Plaintiff alleged that her mental impairments—PTSD, depressive disorder, anxiety

4    disorder, substance abuse disorder, ADHD—rendered her unable to work due to anxiety,

5    nervousness, depression, poor concentration, poor social interaction, and poor sleep. Tr. 24, 33

6    (citing, *inter alia*, Tr. 1061–74, 2996–3178, 3777). The ALJ noted that plaintiff's mental exams

7    intermittently showed an anxious or tearful affect corresponding with transient life stressors or the

8    need to adjust Adderall dosage, and assessed an RFC that limited her to simple, routine tasks, no

9    contact with the public, and working in proximity to but not in coordination with coworkers. Tr.

10   27, 33 (citing 3811–12); *see* Tr. 3852, 3857.

11       First, the ALJ discounted the severity of plaintiff's symptom testimony because more often

12   than not mental status exams demonstrated that plaintiff was alert, oriented, pleasant, had normal

13   affect, judgment, insight, memory, attention, concentration, speech, and thought processes, and

14   had no difficulties interacting appropriately with providers. Tr. 26, 33 (citing, *inter alia*, Tr. 1133,

15   2301, 2362, 3012, 3018, 3778, 3792, 3810–11, 3816, 3822, 3827, 3858–59, 3874, 3900, 3903,

16   3908, 3911–12, 3922, 3949, 3974, 3986). The ALJ also noted that plaintiff's treating mental health

17   providers assessed that she has no serious dysfunction in her ability to manage self-care activities

18   or work activities, while other mental health providers assessed her functional limitations as mild

19   or moderate. Tr. 33 (citing 3084, 3786, 3844).

20       Second, the ALJ discounted plaintiff's symptom testimony based on her self-reported

21   improvement with treatment such as medication and therapy. Tr. 26, 33 (citing, *inter alia*, Tr.

22   1114, 1120, 1150, 1175, 1178–79, 2996, 3149, 3154–55, 3174); *see, e.g.*, Tr. 1175 ("'I am doing

23   really well, I am still anxious sometimes but not that bad[.].' Clt stated that she is taking her meds

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 14

1    and they seem to be working well currently."). The ALJ also noted that plaintiff reporting that

2    attending AA and NA meetings were helpful and seemed to lower her anxiety. Tr. 33 (citing 3857).

3        Third, the ALJ determined that plaintiff's activities suggested less severe functional

4    restrictions than did plaintiff's testimony. Tr. 33–35. Although plaintiff alleged that her anxiety

5    caused difficulties in leaving the house or with social interaction, Tr. 137, the ALJ observed that

6    plaintiff worked as a mystery shopper for at least two years, which required visiting businesses to

7    shop and engaging in job interviews to assess the businesses. Tr. 34 (citing Tr. 58–59, 2917, 3001,

8    3041), 2880, 2890, 2896). Moreover, the ALJ noted that the record showed plaintiff traveling

9    independently out-of-town and out-of-state. Tr. 34 (citing Tr. 2903, 3099).

10        The ALJ cited specific, clear and convincing reasons for discounting plaintiff's

11    allegations of debilitating mental symptoms. Plaintiff's arguments to the contrary do not

12    undermine the reasonableness of the decision and do not demonstrate that the decision was

13    unsupported by substantial evidence or a misapplication of the law.

14        **3.  Lay Testimony**

15        Plaintiff contends that the ALJ did not provide germane reasons to reject the lay evidence

16    from plaintiff's boyfriend. Dkt. 18, at 21–23; *see* Tr. 703–10, 782–86. The Court disagrees.

17        When an ALJ provides clear and convincing reasons for rejecting a claimant's subjective

18    testimony, and the lay-witness testimony is similar to the claimant's testimony, "it follows that

19    the ALJ also have germane reasons for rejecting [the lay-witness] testimony." *Valentine v.*

20    *Commissioner of SSA*, 574 F.3d 685, 694 (9th Cir, 2009). The ALJ reasonably found that the lay

21    statements "generally reflect the same allegations made by the claimant, allegations that are not

22    consistent with the overall record for the reasons discussed above at finding #5." Tr. 38

23    (referring to discussion at Tr. 27–38). Plaintiff has not demonstrated that the ALJ's decision to

discount the lay testimony of plaintiff's boyfriend was unsupported by substantial evidence or the result of a misapplication of the law.

**4.  RFC Assessment**

Plaintiff contends that the ALJ harmfully assessed an RFC that did not include the limitations set forth by Drs. Cline, Wilkinson, Ho, and Anderson, and other medical evidence, as well as the limitations reflected in the testimony by plaintiff and her boyfriend. The Court disagrees for the reasons stated earlier. Plaintiff has not demonstrated that the ALJ's RFC assessment was unsupported by substantial evidence or tainted by harmful legal error.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 13th day of January 2025.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 16